## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| **MONTE-JANE MITTEN,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| **vs.** | ) **Case No. 19-2782-TC-GEB** |
| | ) |
| **NOVARTIS PHARMACEUTICALS** | ) |
| **CORPORATION,** | ) |
| | ) |
| **Defendant.** | ) |
| | ) |

## MEMORANDUM AND ORDER
## MEMORIALIZING RULINGS FROM MARCH 31, 2021 HEARING

On March 31, 2021, the Court conducted a motion and scheduling hearing. Plaintiff Monte-Jane Mitten appeared through counsel, Jack McInnes and Benjamin Ashworth. Defendant Novartis Pharmaceuticals Corp. appeared through counsel, Charles Reis, IV, and Lillian Manning. After review of the parties' briefs and consideration of the parties' oral arguments, the Court orally **GRANTED IN PART** and **DENIED IN PART** Plaintiff's motion to compel discovery (**ECF No. 47**) and modified the schedule governing this matter. This order memorializes the Court's rulings from the conference.

## I.    Background[1]

Plaintiff Monte-Jane Mitten brings this employment case alleging disability discrimination under the Americans with Disabilities Act, 42 U.S.C. § 12101 *et seq*. ("ADA") and age discrimination under the Age Discrimination in Employment Act, 29 U.S.C. § 621 et seq. ("ADEA") based on her termination. Defendant Novartis Pharmaceuticals Corporation denies discriminating and, in its counterclaim, alleges Plaintiff was terminated for a legitimate, non-discriminatory reason—specifically for misconduct in violation of company policies.

During her employment, Plaintiff was a Novartis Sales Specialist in the Respiratory Franchise ("RF"), and in particular, the Xolair Field Force West Region, responsible for promoting the drug Xolair in the Kansas City area. She was on disability leave when an investigation was conducted by Defendant from March to July 2018 following an anonymous letter regarding another employee—Karyn DelRosso—in the same department. DelRosso was reportedly working for her husband, a dermatologist, on the side, inducing healthcare professionals ("HCPs") to attend her husband's conferences. In addition to other claims of misconduct related to her husband's business, DelRosso reportedly asked other Novartis sales representatives to solicit their own HCP customers to attend these conferences. As a part of the investigation of five Novartis employees, it was discovered Plaintiff sent an email in April 2016 to an HCP soliciting attendance and

---

[1] Unless otherwise indicated, the information recited is gleaned from the parties' pleadings (Pls.' Compl., ECF No. 1; Am. Compl., ECF No. 20; Def.s' Answers and Counterclaims, ECF Nos. 8, 23) and the briefing regarding the instant motion (ECF Nos. 47, 52, 55). This background information should not be construed as judicial findings or factual determinations.

putting the HCP in contact with DelRosso for travel accommodations. Plaintiff also acted as a Botox model when attending one or more of DelRosso's husband's conferences.

Novartis' investigation into these events concluded in July 2018 and when Plaintiff returned from her medical leave on August 20, 2018, after an interview by the investigator, she was terminated. (*See* Investigation Report, ECF No. 47-2.)

Plaintiff filed this employment discrimination case on December 29, 2019. Defendant filed a counterclaim against Plaintiff on March 24, 2020, seeking repayment of the incentive payments she received from August 2016 through March 2017—those she received after she sent the April 2016 email. This matter began progressing just when the COVID-19 pandemic began, and the undersigned set the matter for phased scheduling with an initial goal of completing mediation. (Phase I Scheduling Order, ECF No. 17.) The parties twice sought to extend deadlines (ECF Nos. 27, 29, 30, 31) and mediation was extended to January 29, 2021. Depositions and mediation were scheduled; however, those deadlines were later stayed as a result of discovery disputes (discussed below). The parties also sought three times to extend time to file discovery motions (*see* ECF Nos. 33, 34, 35, 36, 38, 39.)

On January 7, 2021, the court conducted a discovery conference to discuss the breadth of Plaintiff's discovery requests. At the conclusion of the conference, a briefing schedule was implemented to address the scope of Plaintiff's discovery requests and Plaintiff's Rule 30(b)(6) deposition notice to Defendant. Plaintiff was ordered to supplement her disputed discovery requests and Rule 30(b)(6) deposition notice to clarify the issues anticipated in the motion. Defendant's deadline to respond to said supplemental

discovery was suspended, and all deadlines were stayed pending argument at the anticipated motion hearing. (Order, ECF No. 44.)

Plaintiff filed her Motion to Compel Discovery on January 22, 2021 (ECF No. 47), to which Defendant responded on February 5, 2021 (ECF No. 52). As noted above, the motion was decided at the March 31 hearing, and the ruling is memorialized here.

## II.     Plaintiff's Motion to Compel Discovery (ECF No. 47)

Pertinent to the scope of discovery is an overview of the investigation which preceded Plaintiff's termination. The investigation was initially conducted by Defendant's Business Practices Office ("BPO"), a group which oversees Defendant's workforce from the corporate office in New Jersey. The BPO investigated the anonymous complaint. (ECF No. 47 at 2.)[2] Defendant contends the BPO does not make a recommendation or decision regarding the outcome of its investigation—its sole function is fact-finding. (ECF No. 52 at 3.)

After the BPO investigation, the Internal Review Committee ("IRC") received the BPO's Report and then recommended Plaintiff's termination. The IRC included two members of the BPO,[3] and Defendant contends the IRC was assembled to "include certain subject matter specialists based on the case allegations, as well as individuals designated

---

[2] The lead investigators from the BPO were Matt Thomas, Defendant's director of investigation, and Adam Subveri, Defendant's pharmaceutical counsel. Susan Pierre was the Manager of the BPO and Staci Keryc was Manager of Investigation Operations. (*See* ECF No. 47 at 2, Ex. 1-2.)

[3] Members of the IRC included Mr. Thomas, Mr. Subveri, and Sherrie Simms (head of employee relations), Nadya Babigian (director of compliance), Pedro Menedez-Majon (an HR/POBP director for the Pharm division), Tricia Beckles (legal counsel for the RF), and Karen McDougall. (*See* ECF No. 47 at 2, Ex. 1-2.)

to support the relevant franchise." (ECF No. 52 at 4.) In this instance, the IRC included individuals specifically dedicated to support the Respiratory Franchise ("RF"). Plaintiff contends the BPO also "accepted the IRC's recommendation" she be terminated, after which she was terminated. (ECF No. 47 at 3.)

The disputes between the parties generally center on the breadth of Plaintiff's discovery requests, and how limited the information should be—whether it comes from the RF, the IRC, or the BPO or some combination of such groups within Novartis. Generally, Plaintiff believes the investigation leading to her termination was conducted well beyond her assigned work unit and involved a companywide policy, which entitles her to broader discovery. Defendant, on the other hand, maintains the decision regarding all sanctions stemming from the investigation, including Plaintiff's termination, rested entirely with the RF Vice President and Head, Leverne Marsh. Although the BPO conducted the factual investigation, Defendant argues Ms. Marsh made the decision to terminate after considering the information and recommendations from the BPO and IRC. (ECF No. 52 at 9.)

### A.    Duty to Confer

As outlined above, the topics of the pending motion were discussed at the January 7, 2021 conference. The parties, through pre-conference statements and their briefing, outlined their attempts to confer regarding the disputes, and have demonstrated conferral as required by D. Kan. Rule 37.2 and Fed. R. Civ. P. 37(a)(1).

### B.    Legal Standards

Trial "[c]ourts are given broad discretion to control and place appropriate limits on discovery."[4] And "a magistrate [judge] is afforded broad discretion in the resolution of non-dispositive discovery disputes."[5] Plaintiff's discovery requests and deposition notice implicate two primary rules of federal procedure: Fed. R. Civ. P. 26 outlining the scope of discovery, and Rule 30(b)(6) involving the deposition subpoena to Defendant's corporate representative. Each standard is briefly outlined.

### 1.    Fed. R. Civ. P. 26

Rule 26(b)(1) outlines the scope of discovery. This rule provides a party may "obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case. When reviewing proportionality, the Court considers the following factors:  1)  the importance of the issues at stake in the action, 2) the amount in controversy, 3) the parties' relative access to relevant information, 4) the parties' resources, 5) the importance of the discovery in resolving the issues, and 6) whether the burden or expense of the proposed discovery outweighs its likely benefit.[6]

Despite the focus on proportionality in the rule since 2015, relevancy is still to be "construed broadly to encompass any matter that bears on, or that reasonably could lead to

---

[4] *Semsroth v. City of Wichita*, No. 06-2376-KHV-DJW, 2007 WL 2287814, at *1 (D. Kan. Aug. 7, 2007) (citing *Kutilek v. Gannon*, 132 F.R.D. 296, 297 (D. Kan. 1990) (discussing whether to stay discovery).

[5] *In re Urethane Antitrust Litig.*, No. 04-1616-JWL, 2014 WL 61799, at *1 (D. Kan. Jan. 8, 2014) (citing *A/R Roofing, L.L. C. v. Certainteed Corp.*, 2006 WL 3479015, at *3 (D. Kan. Nov. 30, 2006) (other internal citations omitted).

[6] *Lawson v. Spirit AeroSystems, Inc.*, No. 18-1100-EFM-ADM, 2020 WL 3288058, at *10 (D. Kan. June 18, 2020) (citing Fed. R. Civ. P. 26(b)(1).

other matters that could bear on" any party's claim or defense.[7] In other words, the court should permit a request for discovery unless "*it is clear* that the information sought can have *no possible* bearing" on a claim or defense.[8] Relevance at the discovery stage is broad.[9] Information need not be admissible in evidence to be discoverable, but the scope of discovery must be proportional to the needs of the case.[10]

If the discovery sought appears relevant on its face, the party resisting discovery has the burden to establish the lack of relevancy by demonstrating that the requested discovery 1) does not come within the scope of relevancy as defined under Rule 26(b)(1), or 2) is of such marginal relevance that the potential harm occasioned by discovery would outweigh the ordinary presumption in favor of broad disclosure.[11] On the other hand, when the relevancy of the discovery request is not readily apparent on its face, the party seeking the discovery bears the burden to show the relevancy of the request.[12] Relevancy determinations are generally made on a case-by-case basis.[13]

---

[7] *Williams v. UnitedHealth Grp.*, No. 2:18-CV-2096, 2020 WL 528604, at *1-*2 (D. Kan. Feb. 3, 2020) (quoting *Gilmore v. L.D. Drilling, Inc.*, No. 16-CV-2416-JAR-TJJ, 2017 WL 2439552, at *1 (D. Kan. June 6, 2017)). *See also In re EpiPen*, No. 17-MD-2785-DDC-TJJ, 2018 WL 1586426, at *2 (D. Kan. Apr. 2, 2018) (quoting *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978)).
[8] *Gilbert v. Rare Moon Media, LLC*, No. 15-MC-217-CM, 2016 WL 141635, at *4 (D. Kan. Jan. 12, 2016) (quoting *Sheldon v. Vermont*, 204 F.R.D. 679, 689–90 (D. Kan. 2001) (emphasis in original)).
[9] *See Speed Trac Techs., Inc. v. Estes Exp. Lines, Inc.*, No. 08-212-KHV, 2008 WL 2309011 at *3 (D. Kan. June 3, 2008).
[10] Fed. R. Civ. P. 26(b)(1).
[11] *Riley v. PK Mgmt., LLC*, No. 18- 2337-KHV-TJJ, 2019 WL 1509861, at *2 (D. Kan. Apr. 5, 2019) (citing *Gen. Elec. Cap. Corp. v. Lear Corp.*, 215 F.R.D. 637, 640 (D. Kan. 2003)).
[12] *Id.* (citing *McBride v. Medicalodges, Inc.*, 250 F.R.D 581, 586 (D. Kan. 2008)).
[13] *Id.* (citing *Brecek & Young Advisors, Inc. v. Lloyds of London Syndicate*, No. 09-cv-2516-JAR, 2011 WL 765882, at *3 (D. Kan. Feb. 25, 2011)).

A party asserting undue burden must present an affidavit or other evidentiary proof of the time or expense involved in responding to a discovery request.[14]

### 2.    Fed. R. Civ. P. 30

Fed. R. Civ. P. 30(b)(6) provides guidelines for the issuance of subpoenas to an organization. "In order for Rule 30(b)(6) to function effectively, 'the requesting party must take care to designate, with painstaking specificity, the particular subject areas that are intended to be questioned, and that are relevant to the issues in dispute.'"[15] Additionally, even when a party has specifically listed the areas of inquiry sought, a notice is overbroad if the listed areas are not exclusive.[16] Where "the defendant cannot identify the outer limits of the areas of inquiry noticed," compliance is not possible.[17]

### C.    Discussion

Plaintiff seeks four categories of production in her supplemental requests, made up of four Requests for Production ("RFPs"), 2 Interrogatories ("Interrog."), and Rule 30(b) topics: (1) personnel or investigation files of employees who were investigated for violations of the Anti-Bribery and Gifts and/or Conflicts of Interest policies; (2) identification of employees who were forced to repay incentive payments and/or were sued for recovery of such payments; (3) similar complaints of age and/or disability

---

[14] *Speed Trac Techs*, 2008 WL 2309011, at *5.
[15] *Lipari v. U.S. Bancorp, N.A.*, No. 07-2146-CM-DJW, 2008 WL 4642618 at *5 (D. Kan. Oct. 16, 2008) (internal citations omitted).
[16] *Reed v. Bennett*, 193 F.R.D. 689, 692 (D. Kan. 2000).
[17] *Id*.

discrimination; and (4) civil and/or criminal investigations and/or lawsuits against Defendant involving similar ethics violations. Each topic is addressed in turn.

### 1.    Category 1:  Similar Investigations

Plaintiff's Supplemental RFP #1 (formerly RFPs #5 and 6) (ECF No. 47, Ex. 5) seeks personnel and/or investigation files for Defendant's employees who were investigated for violations of the Anti-Bribery and Gifts Policy and/or Conflicts of Interest Policy, dating from January 1, 2014 to present.[18] Plaintiff's original RFP #5 and 6 also limited the request to documents "within Plaintiff's geographic territory of responsibility", but after conferral and discussion on January 7, she removed the geographic limit. These disputes also relate to Plaintiff's 30(b) deposition Topics 22 and 24. (*See* ECF No. 45.)

Plaintiff contends "this is not a typical case where [she] was discriminated against by her supervisor, which would limit her discovery of comparators to employees under that supervisor or office. Because Defendant's investigation and recommendation came from the highest levels of Novartis, purporting to enforce a companywide policy, Plaintiff is entitled to much broader comparators." (ECF No. 47 at 10.) She notes one of the ways she can meet her *prima facie* case of disparate discipline is by showing Defendant imposed discipline under circumstances giving rise to an inference of discrimination, and one of the ways to show this is to demonstrate Defendant treated similarly-situated employees differently. (ECF No. 47 at 10.[19])

---

[18] Plaintiff's initial requests sought the documents from January 1, 2009, but in her supplemental requests, Plaintiff narrowed her request to January 1, 2014.
[19] *Citing, e.g., Lewis v. Four B Corp.*, 347 F. Supp. 2d 1017, 1022-23 (D. Kan. Nov. 18, 2004).

Although the burden rests with Defendant to show undue burden or expense which would result from production, Plaintiff argues the evidence—an internal Novartis email—indicates the Ethics & Compliance department has a database that could be searched. (*See* ECF No. 47 at 12, Ex. 7.) Plaintiff contends all factors related to proportionality weigh in favor of production; however, she does not outline specifically how she meets the factors, aside from saying she is entitled to the information and Defendant cannot, and has not, outlined a burden so high it overrides the relevance of the request.

Defendant responded to Plaintiff's original RFPs #5-6 by narrowing its response to all responsive information for the Xolair Field Force – West, Plaintiff's geographic territory of responsibility, from 2014-2018. Defendant produced information for four employees responsive to RFP #5, but no documents responsive to RFP #6. Defendant later supplemented to address the entire Xolair Field Force (East and West). Despite the expansion, no additional information was found. Defendant objects to further expansion of the responses on the bases of relevance and proportionality.

Regarding relevance, Defendant objects to the temporal scope and the scope of comparators for the requests. It contends Plaintiff failed to confer after Defendant limited the scope to 2014-2018 in its responses, and Plaintiff failed to address the scope in her Motion, so Plaintiff has waived the ability to seek any broader scope. Defendant argues five years of records is reasonable and covers the time from two years before Plaintiff's misconduct to four months following her termination. Defendant asks the Court to apply the same temporal scope (2014-2018) to all four categories of disputed information (discovery requests and deposition topics). (ECF No. 52 at 14.)

Defendant also objects to the scope of comparators, arguing the requests should be limited to similarly situated comparators. Defendant asks to limit the requests "to individuals investigated by the BPO for violations of the Anti-Bribery and Gifts Policy or Conflicts of Interest Policy 1) whose allegations were substantiated to have occurred, 2) who were in the RF, and 3) who were sales specialists." (*Id*. at 15.)

Finally, Defendant also objects on the basis of proportionality, claiming companywide production would be unduly burdensome, and the burden of discovery outweighs its benefits.[20] To support its objection, Defendant provides a declaration from Pedro Menendez-Manjon, Director, People and Organization Business Partner ("POBP") for Novartis.[21] (ECF No. 51, Ex. A.)

To demonstrate the burden of production, Defendant explains it created a report from its Ethics & Compliance department, which tracks some cases referred to IRCs. Defendant searched for any "allegations coded as implicating the Anti-Bribery and Gifts Policy and the Conflicts of Interest Policy, 2014 to 2018." This produced a report identifying over 220 allegations. Defendant claims this report may not be entirely accurate (such as, some allegations being miscoded), some cases involve multiple allegations, and some individuals have multiple allegations. (ECF No. 52 at 19.)

---

[20] ECF No. 52, citing *Lundine v. Gates Corp*., Case No. 18-1235-EFM, 2020 WL 1503514 at *2 (D. Kan. Mar. 30, 2020)).

[21] It appears from the parties' briefing the People and Organization Business Partner ("POBP") is essentially Novartis' Human Resources department. *See* Menendez-Manjon Decl., ECF No. 52-1 at ¶ 4 (stating, "In February 2019, my title changed from HRBP to POBP because the Human Resources team became the People and Organization team, but my job function remained largely the same.")

Because Plaintiff seeks both investigation files and personnel files for the persons investigated, Defendant's affidavit explains the burden it anticipates to fully respond. Confirming the correct coding of each allegation, manually reviewing for accuracy, and locating files would take at least one week for someone fully dedicated to this task alone. Investigation reports, investigation files, outcomes reports, and personnel files are stored in different locations. Because there is no such dedicated employee to gather this information, Defendant suggests it could take several weeks or months to complete.

**Conclusion on Category 1: Other Investigations.**  After review of briefing and consideration of counsel's arguments at hearing, the Court finds the temporal scope of January 1, 2014 through December 31, 2018, is appropriate. Plaintiff did not raise an issue with production ending in 2018, and the time frame—spanning two years prior to Plaintiff's incriminating email to four months following her termination—is relevant.

Even if the BPO is a companywide investigation unit, courts do limit discovery to the level of the supervisor who is "primarily responsible" for the employment decision.[22] This does not mean everyone *potentially* responsible and does not necessarily include everyone involved in the investigation. The BPO appears to be a static group which investigates all allegations companywide, and if the BPO only acted as fact-gatherers—the Court finds Defendant's relevance and proportionality arguments somewhat convincing. The IRC, though, does not appear to be a static committee. This IRC was assembled specifically to include those tied to the RF to ultimately review the facts and make

---

[22] *Owens v. Sprint/United Management Co.*, 221 F.R.D. 649, 654 (D. Kan. 2004).

recommendations for terminations, training, etc. to that particular franchise unit. For these reasons, the Court finds expanding the discovery to the entire RF is appropriate on all requests.

Because, at this juncture, the Court does not find the BPO, but rather the IRC, to be the primary decisionmaker, Plaintiff's motion is **GRANTED in part and DENIED in part** regarding Category 1. The Court also finds Defendant's proportionality arguments regarding companywide expansion convincing. However, given the IRC's relationship to the RF, Defendant is ordered to **expand its production responsive to Plaintiff's Supplemental RFP #1 to the years 2014-2018 and to the Respiratory Franchise**. Defendant should prepare its corporate representative to testify likewise regarding Plaintiff's Rule 30(b)(6) Topics 22 and 24.

As for what types of files (investigation files and/or personnel files) should be produced, the Court accepts Defendant's affidavit noting these files are not stored together, increasing the burden to manually gather all types of files, and personnel files of other employees may contain sensitive information not relevant to this case (although this is covered by the Protective Order). At minimum, Defendant should produce **the official BPO Reports, the IRC Outcomes emails, and any documentation reflecting any ultimate discipline implemented.** In the event this information can be produced without personnel files, Plaintiff's request does seek "personnel and/or investigation files", so no personnel file would necessarily be required. But if full information is not contained in the investigation materials, Defendant should produce any personnel file which contains the relevant information, and full production of the investigated person's personnel file is not

precluded if the investigation documents lead Plaintiff to need additional information. Ultimately, Defendant understands what Plaintiff is looking for, and production should follow accordingly.

In addition, Defendant is also ordered to produce to Plaintiff the report listing the 220-plus allegations implicating the Anti-Bribery and Gifts Policy and the Conflicts of Interest Policy. As requested by Defendant, due to its sensitive nature, the report is to be produced to Plaintiff for attorneys' eyes only. This is not the green light for Plaintiff to request more information, but should provide some additional context to Plaintiff in addition to the expansion of discovery to the RF.

## 2.  Category 2:  Incentive Payments

Plaintiff's Pl.'s Suppl. RFP #2 & 3 (formerly RFP #7, 8 & 9) and Pl's Suppl. Interrog. #2 (formerly Interrogatory #15) (ECF No. 47, Ex. 5) seek documents and information regarding similar employees who were forced to repay incentives or were sued for recovery of the same, from January 1, 2014 to present.[23] This dispute also relates to Plaintiff's 30(b) deposition Topic 26. (*See* ECF No. 45.) Plaintiff was terminated August 20, 2018 but Defendant did not file its counterclaim seeking repayment of incentive payments until March 24, 2020; therefore, Plaintiff believes this was not a genuine attempt to seek repayment but punishment for Plaintiff's lawsuit.

Plaintiff argues even if specific incentives vary by franchise, and the RF has its own metrics, this does not negate Defendant's ability to recover the incentives through a lawsuit

---

[23] The initial requests sought the documents from January 1, 2009, but in the supplement, Plaintiff narrowed her requests to January 1, 2014.

is authorized by a companywide policy. Plaintiff contends she should be able to discover whether Defendant sought recovery of incentives from other employees, or whether Defendant invoked the policy to try to deter Plaintiff from continuing her lawsuit, to support her claim of disparate discipline.

As with the first category of disputes, Defendant objects to production of any additional information based on relevance and proportionality. As noted, Defendant argues the temporal scope of responses should be limited to 2014-2018.  Defendant also contends representatives in different franchises are subject to different pay plans having different requirements, and their contractual obligations would also be different. (ECF No. 52 at 23.) Defendant argues because its counterclaim is purely contractual, it does not support a comparator assessment.

In the event the Court finds the information relevant, Defendant also argues the burden of companywide production outweighs the benefit. Defendant has "no system in place for tracking of employees who have been required to repay incentive payments and/or were sued for recovery of incentive payments." (*Id*. at 25.) And, the RF is one of six franchises within Novartis' Pharmaceutical Division, and the Oncology Division is entirely separate, with its own leadership and organizational structure.  Defendant claims in order to fully respond to this request, it would be forced to individually communicate with the leadership and legal teams for every separate franchise to track each individual who supported each franchise for that five-year period.

**Conclusion on Category 2: Incentive Payments.** Although Plaintiff contends the countersuit is simply punishment for her lawsuit, she does not make a retaliation claim,

therefore the Court finds this information minimally relevant to the claims and defenses in this case. Defendant's counterclaim for incentive payments is contractual, so how it handled other employees' incentive payments has no bearing on this claim. As Defendant suggests, these "discovery requests do not relate to Plaintiff's disparate discrimination claims, warranting a comparators assessment." (ECF No. 52 at 24.) And, although Defendant's overall policy permitting it to seek repayment of incentives is companywide (see Code of Conduct, ECF No. 47-4, p. 4-5), the specific Incentive Plan on which Defendant bases its contractual claim is part of the Respiratory Incentives Plan (*see* ECF No. 52 at 7; ECF No. 55-10, Ex. A-11, *sealed*).

When weighing the importance of the information to the claims in the case with the lack of tracking ability, it appears the burden of gaining the information from the entire company outweighs its minimal relevance. But discovery is broad, and Defendant expressed willingness to expand its search to the RF. Therefore, Plaintiff's motion to compel is **GRANTED in part and DENIED in part** regarding Category 2. Defendant must **supplement its responses to Plaintiff's Supplemental RFP #2-3 and Interrogatory #2 as limited from 2014-2018 (as discussed above) and to the Respiratory Franchise**. Defendant should prepare its corporate representative to testify likewise regarding Plaintiff's Rule 30(b)(6) Topic 26.

### 3.    Category 3:  Complaints by Others

Plaintiff's Suppl. RFP #4 (formerly RFP #12) and Suppl. Interrog. #1 (formerly Interrog. #2) (ECF No. 47, Ex. 1-5) asked Defendant to produce files and information about other Novartis employees within the RF who complained of age or disability

discrimination, including filing charges and lawsuits, from January 1, 2014 to present.[24] This dispute also relates to Plaintiff's 30(b) deposition Topic 4. (*See* ECF No. 45.) Plaintiff claims discovery has shown the persons responsible for her termination "extended far beyond [her] work unit." (*Id.* at 14.) But, in the interest of proportionality, Plaintiff is "willing to limit [her] discovery requests about similar complaints to the [RF]" but is not willing to limit them further. (*Id.*)

After review of the briefing, it became apparent the parties agree to limit Plaintiff's Suppl. RFP #4 and Suppl. Interrog. #1 about similar complaints to the Respiratory Franchise. (ECF No. 47 at 14; ECF No. 52 at 26.)  Therefore, the only potential issue with Category 3 is the temporal scope. As discussed above, the Court finds 2014-2018 the relevant time period for discovery.

**Conclusion on Category 3: Complaints by Others**. Therefore, Plaintiff's motion to compel is **GRANTED** as to Category 3. Defendant must **supplement its responses to Plaintiff's Supplemental RFP #4 and Supplemental Interrogatory #1, with production expanded to the Respiratory Franchise from 2014-2018**. Defendant should prepare its corporate representative to testify likewise regarding Plaintiff's Rule 30(b)(6) Topic 4.

### 4.    Category 4:  Rule 30 (b) Notice / Civil and Criminal Investigations

The disputes regarding the 30(b)(6) deposition Topics 4, 22, 24, and 26 are resolved by the rulings above. (*See* Notice, ECF No. 45.)   The remaining dispute regarding Plaintiff's Rule 30(b)(6) notice is Plaintiff's revised Topic 11.

---

[24] Plaintiff's initial requests, RFP #12 and Interrog. #2, sought information from January 1, 2009; the supplement narrowed the temporal scope to beginning January 1, 2014.

In Topic 11, she seeks "testimony on all "[c]ivil and criminal investigations of Defendant that involved allegations of bribery, improper gifts, and/or conflicts of interest, including but not limited to, the Southern District of New York litigation that resulted in a substantial settlement in the summer of 2020." (ECF No. 45.) Defendant objects to this topic as overbroad, vague, and seeking irrelevant information, and not proportional to the needs of the case.

**Conclusion on Category 4**:  Plaintiff's deposition Topic 11 appears overbroad on its face, particularly with the use of the phrase "*including, but not limited to*", and there is no limitation as to time period. Although the Court has some concerns about relevancy, discovery is broad, and the Court understands Plaintiff's intent is to show Defendant actually encouraged the behavior for which she was terminated, which could make the testimony at least minimally relevant.

However, Topic 11 is overbroad as currently drafted, and does not allow Defendant or the Court to identify the outer limits of what Plaintiff is seeking. During the March 31 hearing, the Court discussed with counsel Plaintiff's goal in asking this question and precisely what information Plaintiff seeks. As written, deposition topic 11 is overbroad and therefore Plaintiff's motion to compel is **DENIED regarding Category 4**. However, Plaintiff is permitted to revise and further narrow her request in line with the discussion during the conference.

## III.   Schedule

As part of the January 7, 2021 conference, all deadlines were stayed and the parties submitted suggested deadlines to govern the remainder of this case. After discussion at the March 31 conference, the Court enters the following schedule:

| SUMMARY OF DEADLINES AND SETTINGS | |
|---|---|
| Event | Deadline/Setting |
| Jointly filed mediation notice, or confidential settlement reports to magistrate judge | 8/20/2021 |
| Mediation completed | 9/10/2021 |
| ADR report filed by Defendant | 14 days after mediation |
| Supplementation of initial disclosures | Per rule and 40 days prior to discovery close |
| Experts disclosed by Plaintiff | 8/16/2021 |
| Experts disclosed by Defendant | 9/20/2021 |
| Rebuttal experts disclosed | 10/4/2021 |
| Physical and mental examinations | 10/1/2021 |
| All discovery completed | 11/12/2021 |
| Motions to amend | 6/25/2021 |
| Motions to dismiss (not expected unless amended complaint filed) | 8/6/2021 |
| Proposed pretrial order due | 12/3/2021 |
| Pretrial conference | 12/16/021 @ 10:00 a.m. |
| All other potentially dispositive motions (e.g., summary judgment) | 1/7/2022 |
| Motions challenging admissibility of expert testimony | 42 days before trial |
| Jury Trial in Kansas City; ETT; 3-4 days. | 9/6/2022 @ 9:00 a.m. |

This scheduling order will not be modified except by leave of Court upon a showing of good cause. All other information and instructions included in the Phase I Scheduling Order (ECF No. 17) shall continue to govern this case.

**IV.     Conclusion**

Therefore, for the reasons discussed in the March 31, 2021 hearing and as set forth herein, in the Court's discretion, Plaintiff's Motion to Compel Discovery (**ECF No. 47**) is **GRANTED in part and DENIED in part**. Defendant must produce the discovery ordered by **April 30, 2021** and prepare its 30(b)(6) witness(es) in accordance with the above rulings. The schedule is amended as noted.

**IT IS SO ORDERED.**

Dated at Wichita, Kansas this 16th day of April 2021.

s/ Gwynne E. Birzer
GWYNNE E. BIRZER
United States Magistrate Judge